# Illinois Official Reports

## Appellate Court

---

### *Torrijos v. International Paper Co.*, 2021 IL App (2d) 191150

---

| | |
|---|---|
| Appellate Court Caption | LUCILA TORRIJOS, Plaintiff-Appellant, v. INTERNATIONAL PAPER COMPANY; TECASA INDUSTRIES USA, INC.; and CANO CONTAINER CORPORATION, Defendants (International Paper Company and Cano Container Corporation, Defendants-Appellees). |
| District & No. | Second District<br>No. 2-19-1150 |
| Filed | June 22, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 18-L-75; the Hon. Susan Clancy Boles, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Adrian Vuckovich and Kathryne Hayes, of Collins Bargione & Vuckovich, of Chicago, for appellant.<br><br>Jennifer L. Dlugosz, of Husch Blackwell LLP, of Chicago, and Joseph C. Orlet and Mohsen Pasha, of Husch Blackwell LLP, of St. Louis, Missouri, for appellee International Paper Company.<br><br>Christopher G. Buenik, Christopher M. Cano, and Meredith B. Fileff, of Franco Moroney Buenik LLC, of Chicago, for other appellee. |

| Panel | JUSTICE BRENNAN delivered the judgment of the court, with opinion. |
|---|---|
| | Justices Jorgensen and Schostok concurred in the judgment and opinion. |

## OPINION

¶ 1      Plaintiff, Lucila Torrijos, appeals from the trial court's orders granting summary judgment in favor of defendant, International Paper Company (IPC), granting with prejudice Cano Container Corporation's (Cano) motion to dismiss plaintiff's amended complaint pursuant to section 2-619(a)(5) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(5) (West 2018)), and denying plaintiff's motions to reconsider.

¶ 2      The trial court held that plaintiff's personal injury action against IPC was barred by the exclusive-remedy provision of the Workers' Compensation Act (Act) (820 ILCS 305/5(a) (West 2016)) because there were no genuine issues of material fact with respect to the existence of a borrowed-employee relationship as set forth in section 1(a)(4) of Act (*id.* § 1(a)(4)). The trial court also held that plaintiff's personal injury action against Cano was barred by the statute of limitations because plaintiff failed to comply with the requirements for converting Cano from a respondent in discovery to a defendant pursuant to section 2-402 of the Code (735 ILCS 5/2-402 (West 2018)).

¶ 3      For the reasons set forth below, we affirm.

¶ 4                                    I. BACKGROUND

¶ 5      The following is derived from the pleadings, depositions, and documents on file.

¶ 6                          A. Plaintiff's Employment and Injury

¶ 7      IPC and Cano are both packaging companies. On August 25, 2015, IPC purchased from Cano corrugated packaging equipment, including a flexo-folder-glue machine, allegedly designed and manufactured by defendant Tecasa Industries USA, Inc. (Tecasa), and assumed Cano's lease of a packaging plant in Aurora. IPC contracted with Kane County Personnel, Inc., doing business as Manpower (Manpower), a temporary staffing agency, for the provision of temporary workers.

¶ 8      Manpower hired plaintiff as a temporary worker on January 15, 2016. Thereafter, Manpower instructed plaintiff to report to IPC's Aurora plant to interview for a position with responsibilities to include "performing general labor and eventually operating machines that produce corrugated paper products used for packing purposes" and "additional production duties as needed." Plaintiff interviewed and completed an employment application with IPC. Manpower then assigned plaintiff to work at IPC, beginning January 28, 2016, and instructed plaintiff to report to Javier Cano, an IPC supervisor. Plaintiff's schedule at IPC was Monday through Friday from 7 a.m. to 3:30 p.m.—the same shift as IPC employees.

¶ 9      Plaintiff testified that, on her first day of work, she met Javier prior to the start of her shift. Javier provided plaintiff with safety equipment—ear plugs, goggles, and gloves. They proceeded to "an area outside the cafeteria" where "everybody gathered" and Javier gave the

daily assignments. Javier instructed plaintiff that her initial duty would be "piling up boxes" and that she "had to be working at all times." Gradually, plaintiff also worked on loading the cardboard "paper" into the machines. Specifically, she and another employee began to alternate, with Javier's approval, the "box stacking" and "feeding" duties at their assigned machine.

¶ 10    Plaintiff testified that no Manpower representative ever came to IPC to supervise her work, that she considered Javier her supervisor, and that Javier was the only person who provided her job assignments. According to plaintiff, "Manpower was the only one that could remove me from *** where I was assigned to work," but Javier "could tell Manpower not to send me anymore." However, plaintiff testified that she understood that her employer was Manpower. Manpower paid plaintiff her wages. The employee handbook that Manpower gave plaintiff provided in bold print: "Manpower is your employer." Plaintiff was directed to call Manpower's office if she were sick or late to work.

¶ 11    Plaintiff testified that, when she reported to work on February 8, 2016, Javier assigned her to the flexo-folder-glue machine. Plaintiff began the shift as the paper loader. At one point, when the machine stopped and in light of Javier's instruction to "always be busy," plaintiff stepped down from the platform of the loading station, picked up a towel, and began to clean the flexo-folder-glue machine table. As she was wiping, the machine restarted. Plaintiff's hand was pulled under the front barrier guard and became trapped inside the machine. Paramedics extracted plaintiff's hand from the machine, and she subsequently underwent multiple surgeries. Plaintiff alleges permanent disability and disfigurement of her hand. Plaintiff testified that she filed a workers' compensation claim and is "now on [workers'] compensation."

¶ 12                        B. Initial Proceedings in State Court

¶ 13    Almost two years later, on February 2, 2018, plaintiff filed a complaint against IPC and Tecasa, in the circuit court of Kane County (state court action).[1] Count I against IPC alleged negligent maintenance of the flexo-folder-glue machine. Count II against Tecasa alleged negligent design and manufacturing of the flexo-folder-glue machine. However, the parties represent that Tecasa is a defunct entity and that service was never effectuated. Plaintiff also named in the complaint Cano and Manpower as respondents in discovery pursuant to section 2-402 of the Code (*id.*). The following month, plaintiff issued to Cano a summons for discovery, interrogatories, and a request to produce documents.

¶ 14    Upon the filing of the complaint in state court, the case was scheduled for a case management conference on April 24, 2018. On April 11, 2018, however, IPC removed the case to the United States district court for the Northern District of Illinois based upon diversity jurisdiction (federal court action). See 28 U.S.C. §§ 1332(a), 1441(b) (2018). The notice of removal provided that the amount in controversy exceeded $75,000 and that there was complete diversity of citizenship among the parties: plaintiff was an Illinois citizen; IPC was a New York and Tennessee citizen; and Tecasa was a Maryland citizen. The notice of removal further provided that the citizenship of Cano and Manpower was not relevant because they were respondents in discovery, not defendants, citing in support *Allen v. Thorek Hospital*, 275

_____

[1]Plaintiff also improperly named International Paper, Inc., as a third defendant; this entity did not exist.

Ill. App. 3d 695, 703 (1995) ("It is well settled, however, that a respondent in discovery is not a party to a lawsuit."), and *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1485 n.3 (7th Cir. 1996) (the citizenship of a respondent in discovery was not considered for purposes of determining diversity jurisdiction).

¶ 15    Notwithstanding removal of the case to federal court, the case remained on the state court's case management call. On April 24, 2018, the state court entered an order, *inter alia*, stating that Cano, "having been served and failed to appear, is defaulted and shall answer outstanding discovery by May 31, 2018," directing plaintiff to serve the order on Cano, and continuing the matter to June 27, 2018, for a status hearing. On May 15, 2018, Cano filed a motion in state court to vacate the April 24, 2018, order on the ground that the state court lost jurisdiction over the case upon removal to federal court.

¶ 16    On May 23, 2018, the state court entered an order, providing: "All orders stayed until further order of the court." The motion to vacate was continued several times. Ultimately, on July 25, 2018, following a status hearing, the state court entered an agreed order granting Cano's motion to vacate the April 24, 2018, order and stating that "[t]he parties, including the Respondents in Discovery, agree the case has been removed to Federal Court for all purposes and is no longer pending before this court."

¶ 17                          C. Proceedings in Federal Court

¶ 18    Upon removal, discovery proceeded in federal court. On July 17, 2018, plaintiff filed a "Motion To Extend Time To Convert Respondents In Discovery To Defendants And To Compel Discovery." According to plaintiff's extension motion, Cano never responded to the discovery requests that plaintiff issued when the case was initially pending in state court. Plaintiff's position was that discovery was not intended to be stayed by the state court's May 23, 2018, order. In fact, plaintiff pointed out, Cano had requested additional time to comply with the discovery requests while the matter was on the state court's docket. Plaintiff further stated in her extension motion that, subsequently, Cano's position was that, as a nonparty, it would not file an appearance in federal court and that a third-party subpoena for discovery was required. Therefore, on July 10, 2018, plaintiff issued to Cano a third-party subpoena for documents. Given the delay occasioned by the foregoing, plaintiff requested a two-month extension of time, to October 2, 2018, to convert respondents in discovery to defendants pursuant to section 2-402 and an order compelling respondents in discovery to respond to discovery requests within 14 days.

¶ 19    Following argument, on July 24, 2018, the federal court granted plaintiff's extension motion. The federal court stated, "I'm going to grant plaintiff's motion for extension of time to amend his [*sic*] complaint and add any additional defendants, and plaintiff will have until October 2nd to add any further defendants." The docket entry provided: "Plaintiff's motion to extend time to convert Respondents in discovery to Defendants and to compel discovery [docket number of motion] is granted. Plaintiff has until 10/2/18 to add defendants. Responses to third-party subpoenas are due 8/10/18." Meanwhile, however, Cano responded to the third-party subpoena on July 20, 2018.

¶ 20    On October 2, 2018, plaintiff filed an amended complaint in federal court. The amended complaint named IPC, Cano, and Tecasa as defendants. The amended complaint did not name Manpower as a defendant. Counts I, II, and VII against IPC alleged negligent maintenance of the flexo-folder-glue machine; failure to supervise, train, and warn; and willful and wanton

conduct. Counts III, IV, and VIII against Cano alleged violation of the implied warranty of fitness for a particular purpose with respect to the flexo-folder-glue machine, negligent training and supervision, and willful and wanton conduct. Count VI against IPC and Cano alleged joint and several liability based upon a joint venture. Count IX against Tecasa alleged negligent design and manufacturing of the flexo-folder-glue machine.[2] IPC answered the complaint and raised, *inter alia*, the affirmative defense that plaintiff's claims were barred by the exclusive-remedy provision of the Act.

¶ 21 Cano filed a motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Fed. R. Civ. P. 12(b)(6)) on the ground that it was barred by the two-year statute of limitations. Following briefing, on April 23, 2019, the federal court entered an order remanding the case to state court, pursuant to 28 U.S.C. § 1447(e) (2018), based upon Cano's "joinder as a nondiverse defendant, which destroys the Court's subject matter jurisdiction over this case." The court noted that, when the case was removed to federal court, diversity jurisdiction existed between plaintiff, an Illinois citizen, and the named defendants—IPC, a New York and Tennessee citizen, and Tecasa, a Maryland citizen. However, after removal, "the Court gave [plaintiff] leave to file an amended complaint but did so as a routine matter, without considering the citizenship of any additional parties [plaintiff] intended to name as Defendants." The amended complaint reflected that, like plaintiff, Cano was an Illinois citizen; thus, Cano's joinder as a defendant destroyed diversity jurisdiction.

¶ 22 Under these circumstances, the federal court noted, it could either deny the nondiverse party's joinder or allow joinder and remand the case to state court. *Id.* § 1447(c); *Jass*, 88 F.3d at 1486. It could not, as plaintiff requested, "permit joinder of a nondiverse defendant *and* retain jurisdiction." (Emphasis added.) *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 759 (7th Cir. 2009). In exercising its discretion to allow joinder and remand the case to state court, the court reasoned that plaintiff did not appear to have added Cano as a means to defeat diversity jurisdiction. The court also found that, "[t]o some extent, [plaintiff] delayed in naming Cano as a Defendant, having identified Cano as a respondent in discovery at the time she initially filed her complaint in state court," but that "the parties' discovery conduct suggests that Cano also played a part in delaying [plaintiff's] ability to determine whether she had valid claims against Cano." Further, while remanding the case would defeat IPC's interest in a federal forum, "this interest did not necessarily overcome [plaintiff's] interest in avoiding parallel and duplicative litigation." The court noted that the discovery in which the parties had engaged in federal court could be used in state court. And finally, the court noted, while "Cano may have a meritorious argument for its dismissal based on the statute of limitations, Cano's dismissal on this basis in state court would not automatically provide [IPC] with another opportunity to remove the case." See *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 71 (7th Cir. 1992) ("cases with non-diverse parties d[o] not become removable just because a non-diverse defendant was dismissed from the case" but rather may be removed only "if the plaintiff *voluntarily* dismissed a non-diverse defendant" (emphasis in original)).

¶ 23 Having determined that it lacked continuing jurisdiction over the case, the federal court further concluded that it "cannot address the statute of limitations issue." Accordingly, the court denied Cano's Rule 12(b)(6) motion to dismiss, "without prejudice to refiling in state court." The case was remanded to state court.

_____

[2]There was no count V.

- 5 -

¶ 24    D. Proceedings on Remand in State Court

¶ 25    Back in state court, IPC moved for summary judgment on the basis of the Act's exclusive-remedy provision. IPC also filed a motion to strike plaintiff's request for punitive damages for failure to establish facts sufficient to support a punitive damages award pursuant to section 2-604.1 of the Code (735 ILCS 5/2-604.1 (West 2016)). Cano moved to dismiss the amended complaint with prejudice, pursuant to section 2-619(a)(5) of the Code.

¶ 26    1. IPC's Summary Judgment Motion

¶ 27    IPC moved for summary judgment on the basis that it was a borrowing employer under section 1(a)(4) of the Act (820 ILCS 305/1(a)(4) (West 2016)), and therefore, plaintiff's claims were barred by the Act's exclusive-remedy provision applicable to borrowing and loaning employers (see *id.* § 5(a)). IPC argued that there were no genuine issues of material fact as to its direction and control over the manner in which plaintiff performed her work or the existence of an implied contract of hire between plaintiff and IPC.

¶ 28    Plaintiff filed a response in opposition to the summary judgment motion, asserting that there were genuine issues of material fact as to the existence of a borrowed-employee relationship. Plaintiff argued that the evidence established that Manpower retained control over the assignments to its employees and told plaintiff that she was a Manpower employee, there was no evidence to establish the requisite contract of hire between plaintiff and IPC, and IPC and Manpower contractually agreed that temporary employees remained Manpower employees.

¶ 29    2. Cano's Section 2-619(a)(5) Motion to Dismiss

¶ 30    Cano filed a motion to dismiss the amended complaint pursuant to section 2-619(a)(5) of the Code, arguing that it had not been named as a defendant within the two-year limitations period for personal injury actions. See 735 ILCS 5/13-202 (West 2018). Cano argued that section 2-402, the respondent-in-discovery statute, was procedural and did not apply in federal court upon removal. Thus, according to Cano, the federal court's grant of plaintiff's motion for an extension of time to convert Cano from a respondent in discovery to a defendant was invalid. Further, even if the statute applied, Cano argued, plaintiff failed to file a motion, setting forth the requisite probable cause, to convert Cano from a respondent in discovery to a defendant, as required by section 2-402.

¶ 31    Plaintiff filed a response in opposition to the motion to dismiss, asserting that (1) section 2-402 is substantive law and thus applicable in federal court upon removal. (2) Cano waived its objection to the federal court's jurisdiction by its active participation in the proceeding, (3) Cano's delay in responding to discovery caused the delay in naming Cano as a defendant, (4) "implicit in the Plaintiff's Motion to extend the time to convert Cano to a defendant was Plaintiff's request to ultimately amend the complaint to convert Cano to a Defendant" and the federal court "seemingly understood that this was the relief Plaintiff was actually seeking" since it ultimately granted plaintiff leave to file an amended complaint, (5) a motion to convert pursuant to section 2-402 was "unnecessary in light of the Court having granted leave to file an amended pleading," (6) the exhibits attached to the amended complaint provided the requisite probable cause to convert under section 2-402, (7) when joined as a defendant, Cano filed a motion to dismiss for failure to state a claim, not a motion to remand, (8) Cano did not

appeal the federal court's remand order, and (9) all proceedings related back to the original state court action (which retained the original case number) pursuant to section 2-616(b) of the Code (735 ILCS 5/2-616(b) (West 2018)).

¶ 32                                 3. Trial Court's Ruling

¶ 33    Following argument, on September 5, 2019, the trial court granted IPC's motion for summary judgment and held that IPC's motion to strike plaintiff's punitive damages request was moot.[3] The trial court also granted Cano's motion to dismiss.

¶ 34                            a. IPC's Summary Judgment Motion

¶ 35    In granting IPC's summary judgment motion, the trial court found that there were no genuine issues of material fact with respect to the existence of a borrowed-employee relationship as set forth in section 1(a)(4) of the Act, citing this court's recent decision in *Holten v. Syncreon North America, Inc.*, 2019 IL App (2d) 180537. Namely, the trial court reasoned, it was undisputed that Manpower, a temporary staffing agency that contracted with IPC to provide temporary employees, was a loaning employer under the Act.

¶ 36    Moreover, the trial court reasoned, there were no genuine issues of material fact as to whether IPC was a borrowing employer. Turning to the five-factor test set forth in *Holten* to determine whether the alleged borrowing employer had the right to direct and control the manner in which plaintiff performed her work, the trial court first noted that plaintiff worked the same hours and "punched in and out like the other IPC employees on her shift." Second, plaintiff "did not report first to Manpower each day but went straight to IPC" and "receive[d] her machine assignment each day from the IPC supervisor, Javier, and *** the other two employees assigned to the machine with her would give her instructions and assistance with what and how to do things." Third, it was undisputed that Manpower supervisors were not present at IPC. Fourth, it was undisputed that IPC "controlled the start and stop work times for Plaintiff and the other shift employees." And fifth, IPC provided plaintiff "with the tools and/or equipment to perform her duties." The trial court also noted plaintiff's acknowledgement that, although Manpower was her employer, IPC could instruct Manpower not to send her back if they no longer wanted her working there and noted that this acknowledgement "was consistent with the staffing agreement between Manpower and IPC, which gives IPC sole discretion to determine which temporary employees are unacceptable and unsatisfactory to perform his or her duties." Accordingly, the trial court found no genuine issue of material fact regarding whether IPC had the right to direct and control the manner in which plaintiff performed her work.

¶ 37    Turning to the existence of a contract of hire between plaintiff and IPC, the trial court reasoned that, as recognized in *Holten*, an employee's consent to the requisite contract of hire with the borrowing employer may be implied in the context of a business like a temporary employment agency. The trial court noted that plaintiff testified that she knew she was going to be working for IPC, she chose to fill out the application, and she accepted the temporary employment assignment. The trial court further pointed out: "Plaintiff argues a point to which

_____

[3]There are no arguments raised on appeal with respect to the holding that IPC's motion to strike the punitive damages request was moot.

there is no disagreement, that being that Manpower was the Plaintiff's employer. All agree that Manpower was Plaintiff's general employer. That is not an issue." Indeed, "Manpower can be the general employer, while IPC *** still qualifying [*sic*] as the borrowing employer." Accordingly, the trial court found no genuine issues of material fact with respect to the existence of an implied contract of hire between plaintiff and IPC.

¶ 38    As a final matter, the trial court rejected plaintiff's "attempts to muddy the water by setting forth pages of irrelevant facts and/or argument such as facts surrounding IPC's acquisition of Cano's assets, and need for temporary workers, IPC's alleged knowledge regarding machinery compliance with safety standards, IPC's failure to reach out to the Plaintiff after her injury, *et cetera*." In sum, the trial court granted summary judgment in IPC's favor on the ground that, as a borrowing employer, IPC was entitled to immunity from plaintiff's personal injury suit under the exclusive-remedy provision of the Act.

¶ 39                        b. Cano's Section 2-619(a)(5) Motion to Dismiss

¶ 40    In granting Cano's motion to dismiss, the trial court held that plaintiff's personal injury action against Cano was barred by the two-year statute of limitations set forth in section 13-202 of the Code. Initially, the trial court stated that it "was not persuaded" that the respondent-in-discovery statute, section 2-402, applied in federal court to removal cases. The trial court reasoned that applying section 2-402 in federal court "would conflict directly with Rule 19 [(Fed. R. Civ. P. 19 (governing compulsory joinder))] and Section 1447(e) [(28 U.S.C. § 1447(e) (2018) (governing joinder of defendants in removed cases))], making those rules meaningless in diversity cases, a result that conflicts with both the Supremacy Clause and the *Erie* doctrine."

¶ 41    The trial court recognized the decision in *Moomaw v. Mentor H/S, Inc.*, 313 Ill. App. 3d 1031, 1035-38 (2000), holding that section 2-402 is substantive and thus applicable in federal court. However, the trial court also considered the federal district court's subsequent decisions to the contrary in *Leach v. Conoco Phillips Co.*, No. 08-cv-0143-MJR-CJP, 2008 WL 3200835 (S.D. Ill. Aug. 6, 2008), and *Montclair-Bohl v. Janssen Pharmaceutical, Inc.*, No. 06 C 2166, 2006 WL 2700013 (N.D. Ill. Sept. 13, 2006). Specifically, the trial court pointed out that, in holding that section 2-402 is procedural and thus not applicable in federal court, the district court in *Montclair-Bohl* questioned the viability of the *Moomaw* decision given its rationale that section 2-402 is substantive because it is limited to a particular area of law, *i.e.*, medical malpractice, as well as its rationale that a plaintiff may disregard section 2-402 and err on the side of simply naming all potentially liable entities or persons as defendants when the expiration of the limitations period is imminent. *Id.* at *3 (citing *Moomaw*, 313 Ill. App. 3d at 1037-39). As stated by the district court in *Montclair-Bohl*, while section 2-402 originally applied only in medical malpractice actions, it was amended in 1989 to apply in " 'any civil action.' " *Id.* at *2-3 (quoting Pub. Act 86-483, § 1 (eff. Sept. 1, 1989) (amending Ill. Rev. Stat. 1987, ch. 110, ¶ 2-402)). Moreover, the district court in *Montclair-Bohl* reasoned, the question in an *Erie* analysis is whether a state rule would lead to forum shopping, not whether the rule's impact "might prompt a late-filing plaintiff to name all potentially liable parties as defendants." *Id.* at *3 (citing *Moomaw*, 313 Ill. App. 3d at 1038). Accordingly, here, the trial court concluded that section 2-402 is not applicable in federal court and that, "if plaintiff wanted to utilize 2-402, then [she] could have done so prior to removal to the Federal Court."

¶ 42 Regardless of section 2-402's applicability in federal court, however, the trial court held that plaintiff did not comply with the statute. Specifically, "[e]ven assuming that the extension of time granted to the Plaintiff to convert Cano to a party defendant was a valid extension, it is clear that Plaintiff did not comply with 2-402 in never filing, either in federal or state court, a motion to convert Cano to a party defendant setting forth probable cause for doing so." In rejecting plaintiff's arguments that her intent to convert Cano to a defendant was presumed by the filing of her motion to extend the time to convert and that her amended complaint alleged facts sufficient to support a probable cause finding, the trial court reasoned that "civil procedure statutes do not work that way." The trial court found no basis to relax the statutory requirement of a motion to convert supported by probable cause.

¶ 43 The trial court further rejected plaintiff's argument that Cano's involvement in discovery and failure to object to plaintiff's noncompliance with section 2-402 amounted to a waiver of Cano's right to argue that it should not be made a defendant. Rather, the trial court noted, it was plaintiff's burden to comply with section 2-402. The trial court concluded, "Simply put, Plaintiff's failure to comply with 2-402 is the fault of the Plaintiff."

¶ 44 The trial court also observed that the relation-back doctrine set forth in section 2-616(b) applies to the addition of a cause of action, claim, or defense, not the joinder of parties. To the extent plaintiff relied on section 2-616(d), the trial court likewise noted the inapplicability of that provision, as there was never a mistake as to Cano's identity. Moreover, the trial court reasoned, application of section 2-616(d) "would not serve substantial justice and would be allowing Plaintiff to subvert the mandate under 2-402." Indeed, the trial court concluded: "It could be that Cano may not be prejudiced because it knew of its potential involvement in this case from the beginning, but 616(d) applies when Plaintiff has made a reasonable mistake in the identity of a party[;] it is a sort of shield for Plaintiff. Here[,] Plaintiff wants to use 616 as a sword to get around her lack of compliance with 2-402." Accordingly, the trial court held that plaintiff failed to meet her burden of converting Cano to a defendant within the limitations period and therefore granted with prejudice Cano's motion to dismiss the amended complaint.

¶ 45                                c. Plaintiff's Motions to Reconsider

¶ 46 Plaintiff timely filed motions to reconsider the trial court's rulings. On December 4, 2019, the trial court denied the motions to reconsider and granted plaintiff's oral motion to voluntarily dismiss Tecasa. Plaintiff timely appealed.

¶ 47                                II. ANALYSIS

¶ 48 Plaintiff challenges the trial court's grant of summary judgment in IPC's favor, its grant of Cano's section 2-619(a)(5) motion to dismiss the amended complaint, and its denial of her motions to reconsider. We address each argument in turn and affirm the trial court's judgment, as set forth below.

¶ 49                                A. Summary Judgment (IPC)

¶ 50 Plaintiff argues that the trial court erroneously granted summary judgment in IPC's favor on the applicability of the Act's exclusive-remedy defense. According to plaintiff, there were genuine issues of material fact as to whether a borrowed-employee relationship existed. Plaintiff also argues that, regardless, IPC "contracted away" the protection of the exclusive-

remedy provision through its staffing agreement with Manpower. IPC responds that there were no genuine issues of material fact with respect to IPC's direction and control of plaintiff's work and the existence of an implied contract of hire between IPC and plaintiff. IPC also argues that plaintiff forfeited her argument that it "contracted away" its immunity under the Act and that, in any event, its contract with Manpower was irrelevant to the borrowed-employee relationship.

¶ 51    Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). "The purpose of summary judgment is not to try a question of fact, but rather to determine whether a genuine question of material fact exists." *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 162 (2007). In determining whether there is a genuine issue of material fact, the pleadings, depositions, admissions, and affidavits must be construed strictly against the movant and liberally in favor of the opponent. *Id.* A triable issue of fact exists where there is a dispute as to a material fact or where, although the material facts are not in dispute, reasonable minds might differ in drawing inferences from those facts. *Id.* at 162-63. Although summary judgment can aid in the expeditious disposition of a lawsuit, it is a drastic measure and, thus, should be allowed only where the movant's right to judgment is "clear and free from doubt." *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). We review summary judgment rulings *de novo*. *Id.*

¶ 52    With these concepts in mind, we address whether the trial court properly entered summary judgment in IPC's favor on the exclusive-remedy defense set forth in section 5(a) of the Act. The Act is intended to provide financial protection to workers for accidental injuries arising out of and in the course of employment. *Falge v. Lindoo Installations, Inc.*, 2017 IL App (2d) 160242, ¶ 14 (citing *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 462 (1990)). The Act imposes upon the employer liability without fault (see *id.*), but, in exchange, section 5(a) of the Act provides:

> "No common law or statutory right to recover damages from the employer *** for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act ***." 820 ILCS 305/5(a) (West 2016).

This exclusive-remedy provision is part of the *quid pro quo* pursuant to which the employer assumes liability without fault but is relieved of the prospect of large verdicts for damages. *Meerbrey*, 139 Ill. 2d at 462.

¶ 53    The issue in this case is whether IPC was entitled to immunity under the exclusive-remedy defense as a borrowing employer under the Act. "An employee in the general employment of one person may be loaned to another for the performance of special work and become the employee of the person to whom he is loaned while performing the special service." *A.J. Johnson Paving Co. v. Industrial Comm'n*, 82 Ill. 2d 341, 346-47 (1980). Our supreme court has long recognized the applicability of the common law borrowed-employee doctrine to workers' compensation cases. *Id.* at 347; *Holten*, 2019 IL App (2d) 180537, ¶ 27.

¶ 54    The Act specifically incorporates the borrowed-employee doctrine and extends the immunity of the exclusive-remedy provision to borrowing and loaning employers. 820 ILCS 305/1(a)(4) (West 2016); *Holten*, 2019 IL App (2d) 180537, ¶ 28. Section 1(a)(4) provides:

"Where an employer operating under and subject to the provisions of this Act loans an employee to another such employer and such loaned employee sustains a compensable accidental injury in the employment of such borrowing employer and where such borrowing employer does not provide or pay the benefits or payments due such injured employee, such loaning employer is liable to provide or pay all benefits or payments due such employee under this Act and as to such employee the liability of such loaning and borrowing employers is joint and several, provided that such loaning employer is in the absence of agreement to the contrary entitled to receive from such borrowing employer full reimbursement for all sums paid or incurred pursuant to this paragraph together with reasonable attorneys' fees and expenses in any hearings before the Illinois Workers' Compensation Commission or in any action to secure such reimbursement." 820 ILCS 305/1(a)(4) (West 2016).

¶ 55 " '[R]egardless of which of the two employers pays the workers['] compensation benefits, the exclusivity provision of the Act immunizes both the borrowing employer and the lending employer from further claims.' " *Holten*, 2019 IL App (2d) 180537, ¶ 34 (quoting *Illinois Insurance Guaranty Fund v. Virginia Surety Co.*, 2012 IL App (1st) 113758, ¶ 19). "The legislature 'did not require both a lending employer and borrowing employer to procure identical coverage for the same employees.' " *Id.* (quoting *Illinois Insurance Guaranty Fund*, 2012 IL App (1st) 113758, ¶ 19).

¶ 56 Plaintiff argues that there were genuine issues of material fact as to whether a borrowed-employee relationship existed. To invoke the Act's exclusive-remedy defense, IPC was required to establish that Manpower was a loaning employer and that IPC was a borrowing employer under section 1(a)(4).

¶ 57 Plaintiff does not dispute that Manpower, a temporary staffing agency that contracted with IPC to provide temporary employees, was a loaning employer under section 1(a)(4). Indeed, section 1(a)(4) specifically identifies a loaning employer as one

"whose business or enterprise or a substantial part thereof consists of hiring, procuring or furnishing employees to or for other employers operating under and subject to the provisions of this Act for the performance of the work of such other employers and who pays such employees their salary or wages notwithstanding that they are doing the work of such other employers." 820 ILCS 305/1(a)(4) (West 2016).

See, *e.g.*, *Holten*, 2019 IL App (2d) 180537, ¶ 51 ("The record establishes that, as a temporary staffing agency that contracted with Android to provide temporary employees 'with certain skills and abilities,' Staff on Site was a loaning employer under section 1(a)(4)."); *Falge*, 2017 IL App (2d) 160242, ¶ 16 ("[t]here is no question that Labor Ready [(a temporary staffing agency)] qualifies as a loaning employer").

¶ 58 The question remains, however, whether IPC was entitled to assert immunity as a borrowing employer under the Act. To evaluate the existence of a borrowed-employee relationship for purposes of the exclusive-remedy defense, we consider (1) whether the alleged borrowing employer had the right to direct and control the manner in which the employee performed the work and (2) whether there was an express or implied contract of hire between the employee and the alleged borrowing employer. *Holten*, 2019 IL App (2d) 180537, ¶ 52 (citing *A.J. Johnson Paving*, 82 Ill. 2d at 348, and *Falge*, 2017 IL App (2d) 160242, ¶ 16). Whether a borrowed-employee relationship existed is generally a question of fact. *Id.*

However, if the facts are undisputed and permit but a single inference, the question may be resolved as a matter of law. *Id.*

¶ 59                          1. Direction and Control of Plaintiff's Work

¶ 60    In resolving the existence of a borrowed-employee relationship, the primary consideration is the first element set forth above—that the alleged borrowing employer had the right to direct and control the manner in which the employee performed the work. *Id.* ¶ 54 (citing *A.J. Johnson Paving*, 82 Ill. 2d at 348-49, and *Falge*, 2017 IL App (2d) 160242, ¶ 17). The following factors support this determination: (1) the employee worked the same hours as the borrowing employer's employees; (2) the employee received instruction from the borrowing employer's foreperson and was assisted by the borrowing employer's employees; (3) the loaning employer's supervisors were not present; (4) the borrowing employer was permitted to tell the employee when to start and stop working; and (5) the loaning employer relinquished control of its equipment to the borrowing employer. *Id.*

¶ 61    This court's recent decision in *Holten*, holding that a borrowed-employee relationship existed for purposes of the Act's exclusive-remedy defense, involved facts analogous to those in the instant case. There, too, the plaintiff was employed by a temporary staffing agency, Staff on Site, Inc. (Staff on Site). *Holten*, 2019 IL App (2d) 180537, ¶ 4. Staff on Site assigned the plaintiff to work for the defendant, Android Industries-Belvidere, LLC (Android), as a forklift operator at Android's industrial facility. *Id.* The plaintiff alleged that he was injured when the forklift he was operating at Android fell from inside a tractor-trailer as the tractor-trailer moved away from a loading dock. *Id.* He received workers' compensation benefits after filing a workers' compensation claim against Staff on Site. *Id.* ¶ 5. The plaintiff subsequently filed a negligence claim against, *inter alios*, Android. *Id.* ¶ 6. The trial court granted Android summary judgment on its exclusive-remedy defense under the Act. *Id.* ¶ 18.

¶ 62    In affirming, we held that there were no genuine issues of material fact with respect to the borrowing employer's (Android's) direction and control of the plaintiff's work. *Id.* ¶¶ 57-65. First, it was undisputed that the plaintiff's working hours were the same as those of Android's employees. *Id.* ¶ 57. Second, the only reasonable inference that could have been drawn from the undisputed facts was that the plaintiff received instruction from Android supervisors, and there was no evidence that anyone at Staff on Site provided instruction or assistance to the plaintiff on his duties as a forklift operator at Android. *Id.* ¶¶ 58-59. Third, the plaintiff conceded that no Staff on Site supervisors were present at Android while he worked there. *Id.* ¶ 60. Fourth, the testimony established that the plaintiff reported to Android for his shift and was not required to report to Staff on Site before or after a shift. *Id.* ¶ 61. And finally, it was undisputed that the plaintiff used Android's equipment to perform his duties as a forklift operator at Android. *Id.* ¶ 62.

¶ 63    Android's lack of power to terminate the plaintiff from his general employment with Staff on Site was not determinative. *Id.* ¶ 64. Rather, the critical fact was that Android had the power to dismiss the plaintiff from the *borrowed* employment, *i.e.*, the plaintiff's temporary employment at Android. *Id.* ¶ 65. Likewise, that plaintiff was paid by Staff on Site, not Android, was inconsequential. *Id.* ¶ 66 (citing *A.J. Johnson Paving*, 82 Ill. 2d at 349 (the court did not "deem relevant" that the employee was paid by the loaning employer rather than the borrowing employer)). "The mere fact that the employee does not receive his wages from the [borrowing] employer will not defeat the finding of a loaned-employee situation." *A.J. Johnson*

*Paving*, 82 Ill. 2d at 349; see also *Falge*, 2017 IL App (2d) 160242, ¶ 23 ("It is inconsequential who actually was paying plaintiff for his services."). Accordingly, we held that there were no genuine issues of material fact with respect to Android's direction and control of the plaintiff's work. *Holten*, 2019 IL App (2d) 180537, ¶ 66; accord *Falge*, 2017 IL App (2d) 160242, ¶¶ 22-24, 27 (holding, under analogous facts, that there were no genuine issues of material fact as to whether the borrowing employer directed and controlled the plaintiff's work); *Reichling v. Touchette Regional Hospital, Inc.*, 2015 IL App (5th) 140412, ¶¶ 34-37 (same).

¶ 64        Similarly, here, there were no genuine issues of material fact with respect to IPC's direction and control of plaintiff's work. First, regarding plaintiff's schedule at IPC, it was undisputed that plaintiff's daily shift was 7 a.m. to 3:30 p.m.—the same shift as IPC employees. Second, regarding whether plaintiff received instruction and assistance from IPC's supervisors and employees, plaintiff testified that Javier, an IPC employee, was her supervisor and the only individual who assigned plaintiff her daily duties. There was no evidence that anyone at Manpower provided instruction or assistance to plaintiff with respect to her duties at IPC. As for the third factor—the presence of any loaning employer supervisors—plaintiff testified that no Manpower representative ever came to IPC to supervise her work. Fourth, regarding whether IPC was permitted to tell plaintiff when to start and stop working, as discussed, it was undisputed that plaintiff's daily shift mirrored the 7 a.m. to 3:30 p.m. shift of IPC employees and was set by IPC. Plaintiff testified that "everybody gathered" in an area outside the cafeteria each morning before the shift to receive assignments. Plaintiff was not required to report to Manpower before or after her shift. And finally, as to the equipment plaintiff used to perform her job duties at IPC, it was undisputed that plaintiff used IPC's equipment and machines and that Javier provided plaintiff with her safety equipment, including ear plugs, goggles, and gloves.

¶ 65        Moreover, while plaintiff testified that only Manpower could remove her from where she was assigned to work, critical to the analysis was her acknowledgement that IPC could dismiss her from the borrowed employment—Javier "could tell Manpower not to send me anymore." See *Holten*, 2019 IL App (2d) 180537, ¶¶ 64-65. The fact that Manpower paid plaintiff her wages was likewise inconsequential. See *id.* ¶ 66.

¶ 66        Accordingly, viewing the evidence in the light most favorable to plaintiff, the record demonstrates no genuine issues of material fact with respect to IPC's direction and control of plaintiff's work. Plaintiff presents no argument otherwise.

¶ 67                        2. Implied Contract of Hire Between IPC and Plaintiff

¶ 68        An employee's consent to the requisite contract of hire with the borrowing employer may be implied in the context of employment by a temporary employment agency. *Id.* ¶ 68. Indeed, courts have repeatedly held that a plaintiff's acceptance of an assignment from a temporary employment agency and awareness that he or she worked for the borrowing employer through the temporary employment agency amounted to implied consent to the borrowed-employee relationship. See, *e.g.*, *id.* ¶ 69; *Falge*, 2017 IL App (2d) 160242, ¶ 25; *Morales v. Herrera*, 2016 IL App (1st) 153540, ¶¶ 31-32; *Chaney v. Yetter Manufacturing Co.*, 315 Ill. App. 3d 823, 829-30 (2000).

¶ 69        Here, too, the evidence established that, through the temporary staffing agency Manpower, plaintiff interviewed and completed an employment application with IPC. Thereafter, Manpower instructed her to report to Javier at IPC's Aurora plant. Plaintiff accepted the

- 13 -

assignment and worked for IPC. Thus, plaintiff impliedly consented to the borrowed-employee relationship.

¶ 70     Plaintiff "recognizes" that consent may be implied here but maintains that there "is at least a question of fact as to whether [she] acquiesced" to a contract of hire with IPC because she "was hired by Manpower and told repeatedly that she would remain an employee of Manpower." Plaintiff cites Manpower's employee handbook provision that "Manpower is your employer," and IPC's admission in its answer to plaintiff's initial complaint that plaintiff was solely the employee of Manpower (although she acknowledges that IPC's answer to the amended complaint did not include this admission).

¶ 71     Plaintiff likens this case to *Barraza v. Tootsie Roll Industries, Inc.*, 294 Ill. App. 3d 539 (1997), and *O'Loughlin v. ServiceMaster Co. Ltd. Partnership*, 216 Ill. App. 3d 27 (1991). These cases are inapposite. In *Barraza*, the court held that there were genuine issues of material fact as to the plaintiff's consent to the borrowed-employee relationship where the plaintiff presented evidence, *inter alia*, that he did not apply for the position with the defendant through the temporary employment agency. *Barraza*, 294 Ill. App. 3d at 547-49. The *O'Loughlin* case did not involve a temporary employment agency. Rather, the plaintiff had been employed by a school district as a painter and was unaware that the school district had contracted with the defendant to manage the school district's custodial and maintenance departments, and the court held that there was a factual dispute as to the plaintiff's acquiescence to a purported borrowed-employment relationship. *O'Loughlin*, 216 Ill. App. 3d at 37-40.

¶ 72     Plaintiff's argument misses the point. To be a borrowed employee, a plaintiff must, in the first instance, be an employee of another entity. Here, plaintiff being told that she would remain a Manpower employee is consistent with the existence of a borrowed-employee relationship. See *Reichling*, 2015 IL App (5th) 140412, ¶¶ 10, 38 (holding that the plaintiff impliedly consented to a borrowed-employee relationship by accepting the temporary work assignments even where the facts reflected that the plaintiff signed a document with a provision "indicating that her employer was [the temporary staffing agency]"). A plaintiff's "personal definition of an 'employer' has no bearing on whether [the defendant] was her employer as defined by Illinois law." *Morales*, 2016 IL App (1st) 153540, ¶ 28.

¶ 73     As a final matter, plaintiff argues that IPC "contracted away" the protection of the Act's exclusive-remedy provision by including in its staffing agreement with Manpower the agreement that temporary employees remained Manpower employees. According to IPC, plaintiff forfeited this issue by raising it for the first time in her reconsideration motion. However, a review of plaintiff's response in opposition to IPC's summary judgment motion reflects that plaintiff raised the issue generally *albeit* not as an independent basis to preclude summary judgment. Regardless, the argument lacks merit.

¶ 74     "[T]he agreement between [the defendant] and [the temporary employment agency] has no bearing on [the] plaintiffs' implied contract for hire with [the defendant]." *Id.* ¶ 33. The "loaned employee concept depends on a contract of hire 'between the employee and the special employer,' not the details of the contract between the two employers." *Id.* (quoting *A.J. Johnson Paving*, 82 Ill. 2d at 348); accord *Holten*, 2019 IL App (2d) 180537, ¶ 69. In sum, viewing the evidence strictly against IPC and liberally in favor of plaintiff, we conclude that there were no genuine issues of material fact with respect to the existence of a borrowed-employee relationship. The trial court, therefore, properly entered summary judgment in IPC's favor on the exclusive-remedy defense set forth in the Act.

B. Section 2-619(a)(5) Motion to Dismiss (Cano)

Plaintiff argues that the trial court erred in granting Cano's motion to dismiss the amended complaint on statute-of-limitations grounds. Plaintiff raises myriad challenges to the holding that she failed to convert Cano from a respondent in discovery to a defendant pursuant to the requirements set forth in section 2-402. Cano counters that plaintiff's failure to file a motion to convert Cano to a defendant with supporting evidence of probable cause warranted dismissal on statute-of-limitations grounds.

A motion to dismiss under section 2-619 of the Code admits the legal sufficiency of the pleading but asserts an affirmative defense or other matter that avoids or defeats the claim. *Barber v. American Airlines, Inc.*, 241 Ill. 2d 450, 455 (2011). Section 2-619(a)(5) allows the involuntary dismissal of an action if "the action was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 2018). We review *de novo* the dismissal of a complaint under section 2-619(a)(5). *Ferguson v. City of Chicago*, 213 Ill. 2d 94, 99 (2004).

The issue here is whether the trial court properly granted Cano's section 2-619(a)(5) motion to dismiss the action against Cano as barred by the two-year statute of limitations for personal injury actions. See 735 ILCS 5/13-202 (West 2016). Plaintiff was injured on February 8, 2016. The two-year limitations period, therefore, expired on February 8, 2018. Plaintiff filed her complaint in state court on February 2, 2018—six days before the limitations period ran. In the complaint, plaintiff named Cano as a respondent in discovery, not as a defendant, pursuant to section 2-402.

1. Respondent-in-Discovery Statute

Section 2-402 provides in relevant part:

"The plaintiff in any civil action may designate as respondents in discovery in his or her pleading those individuals or other entities, other than the named defendants, believed by the plaintiff to have information essential to the determination of who should properly be named as additional defendants in the action.

*Persons or entities so named as respondents in discovery* shall be required to respond to discovery by the plaintiff in the same manner as are defendants and *may, on motion of the plaintiff, be added as defendants if the evidence discloses the existence of probable cause for such action.*

A person or entity named a respondent in discovery may upon his or her own motion be made a defendant in the action, in which case the provisions of this Section are no longer applicable to that person.

\* \* \*

A person or entity named as a respondent in discovery in any civil action may be made a defendant in the same action at any time within 6 months after being named as a respondent in discovery, even though the time during which an action may otherwise be initiated against him or her may have expired during such 6 month period. An extension from the original 6-month period for good cause may be granted only once for up to 90 days for (i) withdrawal of plaintiff's counsel or (ii) good cause. Notwithstanding the limitations in this Section, the court may grant additional reasonable extensions from this 6-month period for a failure or refusal on the part of

the respondent to comply with timely filed discovery." (Emphases added.) 735 ILCS 5/2-402 (West 2016).

¶ 81    Accordingly, by virtue of section 2-402, the two-year limitations period for a claim against Cano was extended by six months, from February 2, 2018, to August 2, 2018. Prior to the expiration of this time period and after the case was removed to federal court, plaintiff moved, pursuant to section 2-402, for a two-month extension of time, to October 2, 2018, to convert respondents in discovery to defendants. The federal district court granted the motion. On October 2, 2018, plaintiff filed her amended complaint. In addition to naming IPC and Tecasa as defendants, plaintiff named Cano as a defendant.

¶ 82    We note initially that, in the trial court, the parties disputed whether section 2-402 is procedural or substantive for purposes of its applicability in federal court. See *Pace Communications Services Corp. v. Express Products, Inc.*, 2014 IL App (2d) 131058, ¶ 20 (federal courts sitting in diversity are to apply state substantive law and federal procedural law (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938))). Plaintiff argued in opposition to Cano's section 2-619(a)(5) motion to dismiss that section 2-402 is substantive and applies in federal court upon removal. Cano responded that section 2-402 is procedural and its applicability in federal court would conflict with the federal rules governing joinder.

¶ 83    In her brief on appeal, however, plaintiff merely contends: "The trial court erred by concluding that [plaintiff's] claims against Cano were barred by the statute of limitations based on the trial court's decision that Section 2-402 does not apply in federal court. The decision was an error because the addition of Cano was not dependent on Section 2-402." She does not otherwise develop the argument or provide supporting case law. Cano nevertheless responds with an extensive argument that section 2-402 is procedural and not applicable in federal court. However, we need not resolve the question of whether section 2-402 is procedural or substantive because, regardless of the statute's applicability in federal court, plaintiff failed to comply with the requirements set forth in section 2-402 for converting Cano from a respondent in discovery to a defendant.

¶ 84    The purpose of section 2-402 is to provide a plaintiff with a mechanism to obtain discovery from a person or entity against whom the plaintiff may have a claim to determine if the person or entity should be added as a defendant. *Westwood Construction Group, Inc. v. IRUS Property, LLC*, 2016 IL App (1st) 142490, ¶ 14. "An action brought pursuant to section 2-402 provides for unilateral discovery by the plaintiff, a right unknown at common law, and makes the six-month time requirement an inherent element of the right." *Knapp v. Bulun*, 392 Ill. App. 3d 1018, 1024 (2009). Section 2-402 permits the plaintiff to convert a respondent in discovery to a defendant, "on motion *** if the evidence discloses the existence of probable cause for such action." 735 ILCS 5/2-402 (West 2016). The evidence necessary to establish the requisite probable cause to convert a respondent in discovery to a defendant is that which "would lead a person of ordinary caution and prudence to believe or entertain an honest and strong suspicion that his injury was the proximate result of the tortious conduct of the respondent in discovery." *Williams v. Medenica*, 275 Ill. App. 3d 269, 272 (1995). "Scrupulous adherence to the requirements of section 2-402 is a condition precedent to the plaintiff's right to seek a remedy." *Knapp*, 392 Ill. App. 3d at 1024. Indeed, meeting the statutory requirements set forth in section 2-402 "is a condition of the liability itself and not of the remedy alone." *Robinson v. Johnson*, 346 Ill. App. 3d 895, 902 (2003).

¶ 85    For instance, in *Browning v. Jackson Park Hospital*, 163 Ill. App. 3d 543, 545 (1987), the plaintiff filed a motion, within the six-month time period set forth in section 2-402, to name respondents in discovery as defendants. The limitations period had expired; therefore, the plaintiff's ability to timely name the respondents in discovery as defendants was dependent upon section 2-402. *Id.* at 546. After the trial court granted the plaintiff's motion to add the respondents in discovery as defendants, the defendants sought dismissal on the basis that the plaintiff failed to comply with the procedure set forth in section 2-402. *Id.* at 545-46. Specifically, the plaintiff did not attach supporting evidence to the motion, placed the motion on the routine motion call (which did not contemplate a hearing pursuant to local rule), and failed to present evidence when the trial court heard the motion. *Id.* at 545, 548. The trial court agreed that the plaintiff failed to comply with section 2-402 and dismissed the defendants from the action on statute-of-limitations grounds. *Id.* at 545-46.

¶ 86    In affirming, the appellate court highlighted the requirement set forth in section 2-402 that respondents in discovery " 'may, on motion of the plaintiff, be added as defendants if the evidence discloses the existence of probable cause for such action.' " *Id.* at 546 (quoting Ill. Rev. Stat. 1985, ch. 110, ¶ 2-402). "Illinois courts have interpreted this section to mean that plaintiffs must present evidence to the court in support of their motions to convert respondents to defendant[s]." *Id.* at 546-47 (citing *Ingle v. Hospital Sisters Health System*, 141 Ill. App. 3d 1057, 1062 (1986)). Contrary to this statutory requirement, the plaintiff in *Browning* "did not attach to his motion any affidavits, responses to interrogatories, or any other documents relating to evidence" and "admit[ted] that he presented no evidence when the court heard his motion." *Id.* at 545. In fact, the plaintiff "has not brought to our attention any evidence which he had submitted to the [trial] court which would have provided a basis for granting his motion to add respondents as defendants." *Id.* at 547. Rather, the plaintiff "relied on the allegations of his unverified complaint and his unverified amended complaint, which do not constitute evidence." *Id.* Thus, the court found, the trial court properly dismissed the complaint as to these defendants. *Id.* at 549.

¶ 87    The court in *Browning* noted in conclusion: "We believe that our decision will not adversely affect use of the Respondent in Discovery statute." *Id.* The statute "allows plaintiffs to convert respondents to defendants as long as the evidence from all sources shows adequate grounds for the conversion." *Id.* Thus, "We hold that plaintiffs must request probable cause hearings on their motions to convert respondents to defendants in order to show that they have the evidence required by the statute." *Id.*; accord *Froehlich v. Sheehan*, 240 Ill. App. 3d 93, 103 (1992).

¶ 88    Plaintiff's position is that her July 17, 2018, "Motion To Extend Time To Convert Respondents In Discovery To Defendants And To Compel Discovery" amounted to a motion to convert and that it set forth the requisite evidence of probable cause. We disagree. Not only did plaintiff fail to provide evidence of probable cause to convert Cano from a respondent in discovery to a defendant, she did not even file a motion to convert as required by section 2-402.

¶ 89    Initially, plaintiff's "Motion To Extend Time To Convert Respondents In Discovery To Defendants And To Compel Discovery" was just that—a motion to extend the time to convert Cano from a respondent in discovery to a defendant pursuant to section 2-402. The statute contemplates such an extension motion where a plaintiff needs additional time to determine whether to add a respondent in discovery as a party. One 90-day extension from the original

6-month time period may be granted upon a showing of "good cause," and "additional reasonable extensions" may be granted based upon the failure or refusal of a respondent in discovery to comply with timely filed discovery requests. 735 ILCS 5/2-402 (West 2016). Plaintiff's "Motion To Extend Time To Convert Respondents In Discovery To Defendants And To Compel Discovery" sought a two-month extension and was substantively styled as a request for an extension based upon Cano's purported delay in responding to plaintiff's discovery requests. The federal court granted the extension motion.

¶ 90    However, extending the time to move to convert a respondent in discovery to a defendant and moving to convert a respondent in discovery to a defendant are distinct concepts under section 2-402. Contrary to the bases set forth in the statute for an extension of time to move to convert, section 2-402 provides that a respondent in discovery may, "on motion of the plaintiff," be converted to a defendant "if the evidence discloses the existence of probable cause for such action." *Id.* Like the motion in *Browning*, plaintiff's extension motion lacked any attempt to meet this evidentiary hurdle. There was no reference in the motion to the probable-cause requirement, and there was no evidence submitted in support of the motion. The only exhibits cited in the extension motion were the unanswered discovery requests plaintiff had issued to respondents. Accordingly, plaintiff's extension motion did not amount to the motion to convert contemplated by section 2-402. Contrary to plaintiff's argument, therefore, Cano's failure to object to the extension motion did not equate to a failure to object to its conversion from a respondent in discovery to a defendant. See *Moomaw*, 313 Ill. App. 3d at 1038-39 (a determination of whether the probable-cause standard was met was unnecessary where the defendants failed to object to the motion).

¶ 91    Plaintiff cites *Clark v. Brokaw Hospital*, 126 Ill. App. 3d 779 (1984), to support the position that her extension motion satisfied the requirements of section 2-402. In *Clark*, the trial court dismissed the respondents in discovery from the action on the basis that the plaintiff failed to secure leave of court to timely convert them to defendants. *Id.* at 780-81. In reversing, the appellate court reasoned that "a respondent in discovery may be made a defendant under section 2-402 pursuant to a motion by the plaintiff for leave to file an amended complaint where the motion is filed within six months after the respondent is first named in the complaint as a respondent in discovery *and* either (1) the motion indicates on its face that the purpose of the amendment is to add the respondent in discovery as a defendant or (2) the amended complaint naming the respondent as a defendant is presented or filed with the motion." (Emphasis in original.) *Id.* at 783. Nonetheless, "[t]he addition of the defendant as a party, of course, will only occur if the motion is allowed." *Id.*

¶ 92    The plaintiff in *Clark* had filed a motion for leave to file a third amended complaint within the six-month time period, attached the proposed third amended complaint to the motion, and named the respondents in discovery as defendants in the caption and in separate counts. *Id.* at 782. Thus, the appellate court held that the plaintiff satisfied 2-402. *Id.* Significantly, however, the court further noted that "[i]f plaintiff had only filed her third amended complaint within the six-month period, and did nothing else, respondents would not have been added as defendants." *Id.* at 784 (citing *Torley v. Foster G. McGaw Hospital*, 116 Ill. App. 3d 19, 23 (1983) ("Plaintiffs' failure to secure leave of court to add [the respondents in discovery] as defendants in compliance with section 21.1 [(the predecessor to section 2-402)] deprives the circuit court of jurisdiction over them and denies to plaintiffs the right to proceed against them as defendants since the time within which they could properly have done so has elapsed.")).

- 18 -

¶ 93    *Clark* is inapposite. Here, plaintiff's "Motion To Extend Time To Convert Respondents In Discovery To Defendants And To Compel Discovery" did not indicate on its face that the purpose was to add Cano as a defendant. Rather, the form and substance of the motion reflected that the purpose was to compel discovery from Cano and Manpower and seek an extension of the six-month time period for filing a motion to convert them from respondents in discovery to defendants. Plaintiff did not attach to her motion a proposed amended complaint naming Cano as a defendant. Rather, she merely filed the amended complaint two months later— precisely the action that the court in *Clark* stated would *not* satisfy section 2-402. See *id.*

¶ 94    Moreover, as the court in *Froehlich* subsequently explained in discussing the requirements set forth in section 2-402, "the only issue the appellate court [in *Clark*] considered was the procedural steps a plaintiff must take before a court may consider a motion like this one; it did not address the substantive requirements a plaintiff must satisfy before leave will be granted." *Froehlich*, 240 Ill. App. 3d at 99. In other words, the issue in *Clark* was whether the plaintiff met the procedural requirement of filing a "motion" as set forth in section 2-402. *Id.* The court in *Clark* did not address the substantive requirement of establishing "probable cause" under the statute to convert a respondent in discovery to a defendant, as evidenced by its statement that " '[t]he addition of the defendant as a party, of course, will only occur if the motion is allowed.' " *Id.* at 98-99 (quoting *Clark*, 126 Ill. App. 3d at 783).

¶ 95    In this case, in addition to failing to file a motion under section 2-402, plaintiff did not establish the requisite probable cause to convert Cano from a respondent in discovery to a defendant. Plaintiff argues that the probable-cause requirement is "liberally construed, to the end that controversies may be determined according to the substantive rights of the parties," citing *Williams*, 275 Ill. App. 3d at 273. The issue in *Williams* was the quantum of evidence necessary to establish probable cause to convert a respondent in discovery to a defendant. *Id.* at 272-73. The court stated that the evidence "need not rise to the level of a high degree of likelihood of success on the merits or the evidence necessary to defeat a motion for summary judgment in favor of the respondents in discovery, nor is the plaintiff required to establish a *prima facie* case against the respondent in discovery." *Id.* at 272 (citing *Ingle*, 141 Ill. App. 3d at 1062-65). Rather, "the evidence necessary to establish the requisite probable cause need only be such as would lead a person of ordinary caution and prudence to believe or entertain an honest and strong suspicion that his injury was the proximate result of the tortious conduct of the respondent in discovery." *Id.* (citing *Froehlich*, 240 Ill. App. 3d 93, and *Ingle*, 141 Ill. App. 3d 1057). The court in *Williams* held that the plaintiff satisfied this burden where the plaintiff filed a motion to convert the respondents in discovery to defendants and the motion was supported by the proposed amended complaint, an affidavit and report pursuant to section 2-622 of the Code (735 ILCS 5/2-622 (West 1992)), and a physician's affidavit. *Williams*, 275 Ill. App. 3d at 273.

¶ 96    Here, in contrast, plaintiff did not attach a proposed amended complaint or any supporting evidence to her extension motion. Moreover, she never sought a probable-cause hearing. For these reasons, plaintiff's reliance on *Medjesky v. Cole*, 276 Ill. App. 3d 1061 (1995), and *Ingle*, 141 Ill. App. 3d 1057, is likewise misplaced. In both decisions, the appellate court held that the plaintiff complied with the requirements of section 2-402, where the plaintiffs filed motions for leave to amend their complaints supported by, in *Ingle*, affidavits, discovery depositions, and X-rays (*Ingle*, 141 Ill. App. 3d at 1062) and, in *Medjesky*, the proposed amended complaint (*Medjesky*, 276 Ill. App. 3d at 1063, 1065). Importantly, too, the court in *Medjesky* reasoned

- 19 -

that, "[w]hat is sufficient to establish probable cause depends on the nature and complexity of the case." *Id.* at 1064. There, the court held, "[i]n this negligence action based upon the collision of motor vehicles, probable cause was established by the allegations of the second-amended complaint," which was attached to the plaintiff's motion and alleged negligent actions by the defendant driver. *Id.* at 1064-65. However, the court stated, "[i]n a medical malpractice case or products liability case, a significantly greater amount of 'evidence' may be required." *Id.* at 1065. In the instant case, plaintiff provided no evidence.

¶ 97 According to plaintiff, her extension motion "demonstrated probable cause sufficient to satisfy the federal judge who heard her motion." The record belies this assertion. Plaintiff presented no evidence upon which the district court could have made such a determination, and no evidentiary hearing was conducted on the motion. Rather, the district court's April 23, 2019, remand order noted that it had granted plaintiff's extension motion "as a routine matter." The requirements of section 2-402 are not mere " 'hoop-jumping' or empty formalism," especially given that section 2-402 "affords a plaintiff a six-month extension of the statute of limitations and an opportunity unknown at common law: the right to unilateral discovery." *Froehlich*, 240 Ill. App. 3d at 103. In sum, plaintiff failed to meet the requirements of section 2-402.

¶ 98 To escape the requirements of section 2-402, plaintiff contends in the alternative that, "[i]f the federal court did not have jurisdiction to add Cano as a defendant, the motion to add Cano was still pending at the time the case was remanded." This suggestion, however, conflates the issues of section 2-402's applicability in federal court and plaintiff's compliance with section 2-402. As set forth above, regardless of section 2-402's applicability in federal court, plaintiff did not meet the requirements of section 2-402. She filed a motion to extend the statutory 6-month time period to convert the respondents in discovery to defendants. The district court granted the motion. However, rather than subsequently filing a motion to convert, setting forth the requisite probable cause, plaintiff instead filed her amended complaint. Cano filed a Rule 12(b)(6) motion to dismiss the amended complaint. In its remand order, the district court denied the motion to dismiss without prejudice to refiling in state court. Accordingly, there were no motions pending when the case was remanded to state court. Upon remand, Cano filed a section 2-619(a)(5) motion to dismiss the amended complaint. For the reasons discussed, the trial court properly granted the motion.

¶ 99                          2. Federal Rules of Civil Procedure

¶ 100 Plaintiff argues: "There is more than one procedural method to add or join a defendant in federal court. A federal court litigant need not rely upon 735 ILCS 5/2-402 to add or join a defendant." Plaintiff proceeds to cite Federal Rules of Civil Procedure governing amendments to pleadings and joinder of parties. See Fed. R. Civ. P. 15 ("Amended and Supplemental Pleadings"); Fed. R. Civ. P. 19 ("Required Joinder of Parties"); Fed. R. Civ. P. 20 ("Permissive Joinder of Parties"); Fed. R. Civ. P. 21 ("Misjoinder and Nonjoinder of Parties"). Distilled, plaintiff's argument is that she availed herself of these rules in federal court and that the district court's July 24, 2018, order granting her "Motion To Extend Time To Convert Respondents In Discovery To Defendants And To Compel Discovery," should be deemed the law of the case because Cano did not object to the motion, move to reconsider the order, or appeal the order. In fact, plaintiff argues, Cano "ratified" the order by participating in the federal court proceedings. Cano argues that plaintiff forfeited reliance on the Federal Rules of Civil

- 20 -

Procedure by failing to raise the argument in opposition to Cano's section 2-619(a)(5) motion to dismiss. Regardless, Cano argues, plaintiff's extension motion was not based upon any provisions in the Federal Rules of Civil Procedures and that the rules are inapplicable in any event. According to Cano, plaintiff "should not be permitted to game the system after the fact because she failed to comply with the requirements of [section 2]-402."

¶ 101     Forfeiture aside, we agree that plaintiff's argument lacks merit. Plaintiff contends that she sought and was granted leave to amend her complaint to add Cano as a defendant pursuant to the Federal Rules of Civil Procedure governing amendments to pleadings and joinder of parties. However, the record demonstrates that this is not in fact what happened. Plaintiff filed a "Motion To Extend Time To Convert Respondents In Discovery To Defendants And To Compel Discovery." The only authority she cited in her motion was section 2-402; there was no reference to the Federal Rules of Civil Procedure. Moreover, the substance of the extension motion contained no argument regarding application of the Federal Rules of Civil Procedure. Rather, the extension motion was confined to argument in support of extending the time to move to convert the respondents in discovery to defendants.

¶ 102     While the district court's July 24, 2018, order granted the extension motion and further provided that plaintiff "has until 10/2/18 to add defendants," this order did not purport to decide whether there was probable cause to convert Cano from a respondent in discovery to a defendant; a proposed amended complaint was not attached to plaintiff's extension motion. Indeed, the extension motion and the July 24, 2018, order addressed the potential conversion of both respondents in discovery to defendants, yet the amended complaint filed two months later added only Cano as a defendant, not Manpower. Moreover, in its April 23, 2019, remand order, the district court stated that it had granted leave to file an amended complaint but that it "did so as a routine matter."

¶ 103     Ultimately, plaintiff's reliance upon the Federal Rules of Civil Procedure is illogical. The limitations period for her cause of action against Cano was due to expire six days after she filed her initial complaint in state court and was extended only by virtue of the tolling provision in section 2-402. Thus, the timeliness of her amended complaint against Cano was dependent upon section 2-402. Plaintiff's argument, taken to its logical conclusion, would mean that she could avail herself of the tolling provision in section 2-402 without meeting the statutory requirement of filing a motion to convert Cano to a defendant with supporting "evidence disclos[ing] the existence of probable cause for such action." See 735 ILCS 5/2-402 (West 2016). There is no support for this position in the plain language of section 2-402 or the applicable case law.

¶ 104     As a final matter, plaintiff contends that, "[p]ursuant to both Illinois and federal civil procedure, a defendant may be properly added beyond the statute of limitations if the court allows leave to add the defendant pursuant to the doctrine of relation back or joinder." Plaintiff fails to develop the contention or provide supporting authority and has therefore forfeited the argument. Regardless, as the trial court pointed out, the relation-back provisions set forth in sections 2-616(b) and (d) of the Code (735 ILCS 5/2-616(b), (d) (West 2018)) are not applicable here. Section 2-616(b) applies where a plaintiff seeks to add a claim to an existing action, not where a plaintiff seeks to add a defendant. See *id.* § 2-616(b); *Wilson v. Molda*, 396 Ill. App. 3d 100, 108-10 (2009). While section 2-616(d) applies when a plaintiff seeks to add a defendant (see 735 ILCS 5/2-616(d) (West 2018)), the provision was "designed to afford relief to the plaintiff who, after the limitations period has expired, realizes that he has named

the wrong defendant." *Morton v. Madison County Nursing Home Auxiliary*, 198 Ill. 2d 183, 187 (2001); see also *Zlatev v. Millette*, 2015 IL App (1st) 143173, ¶ 24 (section 2-616(d) "was designed to mirror Federal Rule of Civil Procedure 15(c)(1)(C)"). Plaintiff does not assert that this was a case of mistaken identity. Plaintiff named Cano as a respondent in discovery, not as a defendant. Plaintiff failed to meet the requirements of converting Cano from a respondent in discovery to a defendant pursuant to section 2-402. The amended complaint against Cano was therefore properly dismissed on statute-of-limitations grounds.

¶ 105                              3. Cano's Status as a Respondent in Discovery

¶ 106        The balance of plaintiff's argument centers on her position that Cano intentionally submitted itself to the jurisdiction of the federal court and waived any objection to its addition as a party by its active participation in the case. Plaintiff cites the state court's agreed order, entered on July 25, 2018 (and apparently drafted by Cano's counsel), in which the court granted Cano's motion to vacate the default order and provided that "[t]he parties, including the Respondents in Discovery, agree the case has been removed to Federal Court for all purposes and is no longer pending before this court." According to plaintiff, the language of this order refers to Cano as a party and therefore "establishes that Cano intended to participate in the federal court litigation as a party defendant." We disagree.

¶ 107        To suggest that, because the order referenced respondents in discovery as parties, the respondents in discovery somehow became parties for purposes of the statute of limitations strains logic. The agreed order simply granted Cano's motion to vacate the default order that had been entered against it; the case already had been removed to federal court. Moreover, in her "Motion To Extend Time To Convert Respondents In Discovery To Defendants And To Compel Discovery," plaintiff recounted that Cano had required a third-party subpoena for discovery on the stated ground that it was not a party. And when plaintiff filed her amended complaint in federal court naming Cano as a defendant, Cano moved to dismiss the amended complaint on statute-of-limitations grounds. Given its remand order, the district court denied the motion without prejudice to refiling in state court. Cano renewed the motion in state court.

¶ 108        Plaintiff also cites Cano's attendance at the depositions and proceedings in federal court in support of her position that Cano waived any objection to its addition as a party. Cano responds that plaintiff's counsel agreed that its participation "would have no impact on the pending motion to dismiss or act as any waiver by Cano." Cano cites a January 3, 2019, e-mail from plaintiff's counsel to, *inter alios*, Cano's counsel, stating: "I have no objection to that and encourage you to attend and participate (including asking questions) at Plaintiff's deposition as I will object to you taking [plaintiff's] dep separating if your MTD is denied or the case is remanded to state court. I will not use your participation at Plaintiff's dep as any waiver or argument that you are a party." Plaintiff acknowledges the e-mail but responds that the e-mail was related only to Cano's participation in plaintiff's deposition.

¶ 109        Nonetheless, plaintiff named Cano as a respondent in discovery. "[A] lawsuit naming an individual as a respondent in discovery is not an action against that individual and the individual is not a party to that action." *Delestowicz v. Labinsky*, 288 Ill. App. 3d 637, 639 (1997); accord *Allen*, 275 Ill. App. 3d at 703 ("It is well settled, however, that a respondent in discovery is not a party to a lawsuit."); *Shanklin v. Hutzler*, 277 Ill. App. 3d 94, 100 (1995) (respondents in discovery "are not parties to the action in which they are so named"). It was plaintiff's burden to timely convert Cano from a respondent in discovery to a defendant

- 22 -

pursuant to section 2-402. Plaintiff failed to meet this burden and cannot circumvent the statutory requirements through reliance on Cano's purported conduct.

¶ 110     Finally, plaintiff notes that a respondent in discovery has the ability to be made a defendant upon its own motion (see 735 ILCS 5/2-402 (West 2016)) and states that "there was at least a question of material fact whether Cano voluntarily joined in the federal lawsuit." The record is clear, however, that Cano never moved to be made a defendant. To the contrary, Cano filed motions to dismiss on statute-of-limitations grounds in both federal court and, upon remand, in state court. The trial court properly granted Cano's section 2-619(a)(5) motion to dismiss the amended complaint on the ground that it was barred by the statute of limitations.

¶ 111                              III. CONCLUSION

¶ 112     For the reasons stated, we affirm the trial court's orders granting IPC's motion for summary judgment, granting Cano's motion to dismiss the amended complaint with prejudice, and denying plaintiff's motions to reconsider.

¶ 113     Affirmed.