(No. 45494.—

M & M ELECTRIC COMPANY *et al.*, Appellees, v. THE INDUSTRIAL COMMISSION *et al.*—(Timothy J. McGinn *et al.*, Appellants.)

*Opinion filed March 29, 1974.—Rehearing denied May 31, 1974.*

Jay A. Baier and William J. Harte, of Chicago, for appellant Timothy J. McGinn.

Hackbert, Rooks, Pitts, Fullagar & Poust, of Chicago (Douglas F. Stevenson and William M. Stevens, of counsel), for appellant Northwestern Steel and Wire Co.

Klohr, Braun, Lynch & Smith, of Chicago (Mark A. Braun, of counsel), for appellees.

MR. JUSTICE DAVIS delivered the opinion of the court:

This is a workmen's compensation action brought by Timothy J. McGinn against M & M Electric Company and its insurance carrier, Indiana Insurance Company, based upon an accident which occurred at the steel mill of Northwestern Steel and Wire Company (Northwestern) located at Sterling, Illinois. Northwestern had submitted a purchase order to M & M Electric for the performance of certain heavy-duty electrical work involved in changing

over to a new electric furnace. McGinn fell from a height of approximately 30 feet while on the job, and is now a paraplegic. There is no controversy as to McGinn's physical disabilities.

M & M and its insurance carrier brought Northwestern into the workmen's compensation action by way of a "cross-claim," alleging that Northwestern was a borrowing employer, and therefore was primarily liable for the payment of workmen's compensation benefits, making M & M only secondarily liable. This cross-claim was opposed by claimant McGinn and Northwestern.

The hearings before the arbitrator and the Industrial Commission were largely directed to the issue of whether or not Northwestern was a borrowing employer. The arbitrator found that it was not a borrowing employer and dismissed Northwestern from the case. The Industrial Commission, after hearing further evidence, sustained the decision of the arbitrator and adopted it as the decision of the Commission. M & M then brought a petition for writ of *certiorari* in the circuit court of Whiteside County, and that court reversed the decision of the Commission, holding that Northwestern was a borrowing employer as a matter of law. This appeal is from the decision of the circuit court.

The loaned-employee concept has been specifically incorporated into the Illinois Workmen's Compensation Act as section 1(a)4 of that act (Ill. Rev. Stat. 1967, ch. 48, par. 138.1(a)(4)), as follows:

"(a) The term 'employer' as used in this Act shall be construed to be:

\* \* \*

4. Where an employer operating under and subject to the provisions of this Act loans an employee to another such employer and such loaned employee sustains a compensable accidental injury in the employment of such borrowing employer and where such borrowing employer does not provide or pay the benefits or payments due such injured employee, such loaning employer shall be

liable to provide or pay all benefits or payments due such employee under this Act and as to such employee the liability of such loaning and borrowing employers shall be joint and several, provided that such loaning employer shall in the absence of agreement to the contrary be entitled to receive from such borrowing employer full reimbursement for all sums paid or incurred pursuant to this paragraph together with reasonable attorneys' fees and expenses in any hearings before the Industrial Commission or in any action to secure such reimbursement. Where any benefit is provided or paid by such loaning employer the employee shall have the duty of rendering reasonable cooperation in any hearings, trials or proceedings in the case, including such proceedings for reimbursement.

Where an employee files an Application for Adjustment of Claim with the Industrial Commission alleging that his claim is covered by the provisions of the preceding paragraph, and joining both the alleged loaning and borrowing employers, they and each of them, upon written demand by the employee and within seven days after receipt of such demand, shall have the duty of filing with the Industrial Commission a written admission or denial of the allegation that the claim is covered by the provisions of the preceding paragraph and in default of such filing or if any such denial be ultimately determined not to have been bona fide then the provisions of Paragraph K of Section 19 of this Act shall apply.

An employer whose business or enterprise or a substantial part thereof consists of hiring, procuring or furnishing employees to or for other employers operating under and subject to the provisions of this Act for the performance of the work of such other employers and who pays such employees their salary or wages notwithstanding that they are doing the work of such other employers shall be deemed a loaning employer within the meaning and provisions of this section."

We have previously recognized that the primary test for establishing a loaned-employee relationship is the right to control. In *Raymond Concrete Pile Co. v. Industrial Com.* (1967), 37 Ill.2d 512, at pages 516 and 517 we stated: "In identifying the employer of a loaned employee

the dominant circumstance has been the right to control the manner in which the work is to be done. (See *e.g.*, *American Stevedores Co. v. Industrial Com.* 408 Ill. 449, 454; *Fransen Construction Co. v. Industrial Com.*, 384 Ill. 616; *Allen-Garcia Co. v. Industrial Com.*, 334 Ill. 390.) Stated in more abstract terms, the most significant inquiry has concerned the extent to which the loaning employer delegated to the borrowing employer the right to control the manner of doing the work. Often the determination must be made on the basis of inferences from evidence that bears only indirectly on that issue. In this case the evidence bears directly upon the issue, but it will support conflicting inferences."

There are many different considerations which may be applicable to the loaned-employee question. (See generally Restatement (Second) of Agency, section 220, p. 485 *et seq.*) Due to the large number of factors which may be relevant to any factual situation, we have held that generally the existence of the loaned-employee relationship is a question of fact, and therefore a question for the Industrial Commission. (*Gundich v. Emerson-Comstock Co.* (1961), 21 Ill.2d 117.) The test for whether or not a question is one of law or fact in such cases was set forth in *Henry v. Industrial Com.* (1952), 412 Ill. 279. At page 284 we stated: "If the undisputed facts upon any issue permit more than one reasonable inference to be drawn therefrom, the determination of the issue presents a question of fact, and the conclusion of the commission in deciding the question will not be disturbed upon review; only if the undisputed facts are susceptible of but a single inference can the question be characterized as one of law [citations]." A court may reverse a decision of the Industrial Commission as to a finding of fact only when the decision is against the manifest weight of the evidence. *Wilson v. Industrial Com.* (1972), 51 Ill.2d 522, 524; *Wooldridge v. Industrial Com.* (1970), 47 Ill.2d 244, 246.

The facts are uncontradicted in this case, and our

inquiry is whether the finding of the Industrial Commission that Northwestern was not a borrowing employer under the Act is contrary to the manifest weight of the evidence.

McGinn was a general employee of M & M, where he worked as an apprentice electrician. He was paid only by M & M, took work orders only from the M & M foreman, worked where assigned by M & M and traveled to and from work in an M & M truck. It is agreed that he never explicitly consented to become an employee of Northwestern. McGinn could not be considered an employee of Northwestern unless it can be shown that the very nature of the project gave control over him to Northwestern, and that he implicitly knew of and agreed to this change of control. Such circumstances were not shown by the evidence.

The work to be done by M & M was a part of a very large-scale expansion program undertaken by Northwestern. The program consisted in part of the construction and wiring of a new electric furnace to be used in the production of steel. This project involved some 34,500 volts of electricity, and the changeover was set for the Memorial Day weekend because it required a shutdown of the electrical power to certain portions of the mill.

The plans and sequence of construction were designed by Northwestern personnel, as was the step-by-step progression in which the work of M & M was to be done. The instructions on where, when and how to proceed were given to Wolfe, the M & M foreman. Wolfe was apparently satisfied as to the soundness of Northwestern's plans, for there is no indication that he objected to any of them.

Northwestern did not give orders to any M & M electricians. It would communicate its desires to Wolfe, who would then assign the work to the individual electricians. Northwestern did not attempt to oversee the actual performance of the work except in a most general way.

The parties go into much detail in outlining the facts. We believe the above facts are adequate to provide the Industrial Commission with sufficient grounds to justify the drawing of more than one inference.

There are two theories on which the decision of the Industrial Commission may be affirmed. First, there is sufficient evidence to find that McGinn did not consent to the establishment of an employer-employee relationship between himself and Northwestern, either explicitly or implicitly. It is not possible for a contract of employment to exist without the consent of the parties, and as pointed out by this court in *McHugh-Brighton v. Industrial Com.* (1969), 42 Ill.2d 52, 56, an employee cannot be deemed to have accepted a change in employment if he does not know that it has been offered. The evidence here is sufficient to support the inference that McGinn justifiably believed that he was working for M & M at the time of the accident and could not reasonably have been expected to believe otherwise.

Secondly, there is sufficient evidence to support the inference that McGinn was not totally under the control of Northwestern and freed from the control of M & M. While there are undoubtedly areas of behavior which would justify Northwestern's removal of an M & M electrician from the plant, for instance, flagrant safety violations, this power does not amount to the power to discharge. *Densby v. Bartlett* (1925), 318 Ill. 616, 620-621.

We recognize that an owner, acting as an architect, general contractor or similar person, may carry a great deal of responsibility and authority to correlate the work so that it dovetails with that of the other contractors without being the employer of all those who are involved in the construction project.

Inasmuch as we find that there was sufficient evidence to support the inferences drawn by the Industrial Commission, and that the decision of the Commission was not against the manifest weight of the evidence, the judgment

of the circuit court of Whiteside County is reversed, and the decision of the Industrial Commission reinstated.

*Judgment reversed; decision reinstated.*