JESSE PALOMAR, JR., Plaintiff-Appellant, v. THE METROPOLITAN SANITARY DISTRICT OF GREATER CHICAGO, a/k/a The Chicago Metropolitan Sanitary District, Defendant-Appellee.

First District (3rd Division)   No. 1—90—1122

Opinion filed January 29, 1992.

---

Glenn J. Jazwiec, of Chicago, for appellant.

Raymond Clark Persin, of Chicago, for appellee.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiff, Jesse Palomar, Jr., filed a complaint against defendant, the Metropolitan Sanitary District of Greater Chicago, for damages for personal injuries that he suffered in an accident which occurred on June 24, 1987, upon defendant's premises. On November 7, 1989, defendant filed a motion for summary judgment. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005.) On April 4, 1990, the trial court granted summary judgment in favor of defendant. Plaintiff filed a notice of appeal on April 17, 1990.

Plaintiff makes the following allegations on appeal: (1) that sections 5(a) and 1(a) of the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1987, ch. 48, pars. 138.1(a), 138.5(a)) do not bar him from suing defendant because defendant failed to demonstrate that plaintiff was a loaned employee pursuant to section 1(a) of the Act; (2) that he was not an employee of defendant pursuant to the Act because he was employed by Independent Mechanical Industries, Inc. (Independent), which contracted with defendant; and (3) that defendant waived its right to argue that it was an employer pursuant to sections 5(a) and 1(a) of the Act.

Defendant maintains that (1) it was plaintiff's employer pursuant to section 5(a) of the Act, and that plaintiff therefore has no right to recover damages; (2) there is no question of material fact upon which the trial court's order of summary judgment should be vacated; and (3) plaintiff failed to invoke section 1(a) of the Act as a basis for his argument at trial, and he has therefore waived his right to do so on appeal.

The issues before this court are (1) whether plaintiff and defendant have waived their right to review of the questions they raise on appeal; and (2) whether plaintiff was a loaned employee of defendant at the time of the accident as a matter of law, or whether a question of material fact existed as to whether plaintiff was a loaned employee of defendant. We reverse and remand.

Plaintiff was hired by Independent in November of 1984. Plaintiff was assigned by Independent to work at defendant's facility commonly known as the West-Southwest Treatment Plant in Stickney, Illinois. Independent supplied contract tradesmen to defendant pursuant to a contract which was in effect on the date plaintiff was injured. The contract made the following relevant provisions:

"*GENERAL*

Section (1). The contractor shall furnish *** Machinists, *** and other classifications of labor, if required, for necessary maintenance and alterations to boilers, steam generating units,

duct work, pumps, blowers and various sewage and sludge handling equipment and structures at the West- Southwest Sewage Treatment Works and other installations, throughout the duration of this Contract.

\*\*\*

*SUPERVISION*

Section (2). The contractor shall furnish a competent superintendent for the proper administration, coordination and supervision of the work. \*\*\* No direct payment shall be made for such superintendent under any of the unit price items of the Contract. The cost for superintendence shall be included in the unit prices bid for Items 1-10.

\*\*\* The Engineer will order and approve the number of workmen the Contractor shall employ on the work and the Contractor shall increase or reduce the number of workmen employed when so ordered by the Engineer. It is intended that the Contract tradesmen accomplish sufficient quality and quantity of work. The Engineer has the responsibility to advise the Contractor of any shortcomings in performance by individuals. If the work is not brought up to an acceptable level, the Engineer will order dismissal. The Contract tradesmen shall be required to adhere to District policies regarding employee conduct and to obey work rules. The Engineer has the authority to order dismissal of Contract tradesmen for lack of performance or for contravention of District personnel policies.

\*\*\*

*MEASUREMENT*

Section (6). The unit prices per man-hour agreed upon to be paid under the respective items of this Contract shall include all costs necessary to perform the work specified herein, including wages (including welfare and pension) for journeymen and foremen, taxes, \*\*\* general supervision, overhead and profit."

All of Independent's contract tradesmen assigned to work for defendant met each morning at the main building of defendant's facility. Conrad Pomorski, an employee of Independent, was in charge of all contract tradesmen who were working at defendant's facility. The acting foreman of the machinists at defendant's facility was Ed Stifter. Stifter was an employee for defendant. Stifter provided plaintiff and the other machinists with their job assignments. Plaintiff was a machinist assigned to the machine shop. Defendant also employed several engineers who supervised its employees in various buildings at the facility. Plaintiff was working in the Digester Building under the

supervision of Arnulfo Harting, an engineer employed by defendant, on the day that he was injured.

Plaintiff stated in his affidavit that he reported to Stifter on the morning of June 24, 1983, and that he then went to work in an area of defendant's facility known as the Digester Building. Plaintiff maintained that when he arrived at his work area, he saw sludge on the floor. Plaintiff then stated that he and his co-worker Raymond Blattner, also an employee of defendant, contacted Harting by telephone to advise him of the situation. Plaintiff further stated that Harting advised Blattner that the pump had to be installed on that day, and he suggested that plaintiff and Blattner install the pump with the sludge there. Plaintiff maintained that he then called Stifter and complained about the sludge, and that Harting then informed plaintiff that the pump had to be installed. Plaintiff stated that Harting later visited the area and told Blattner that he would have to clean the area himself. Plaintiff stated that Blattner complied and attempted to rinse the sludge away using a water hose. Plaintiff further stated that he and Blattner then set the pump in place. Plaintiff slipped and fell on the remaining sludge while he was attempting to bolt the pump in place. The accident occurred at approximately 10:30 a.m. Plaintiff stated that he worked until 3 p.m., at which time he reported the accident to Pomorski, and that he told Pomorski that he was leaving work early because he was in pain. Plaintiff left work shortly thereafter. Plaintiff worked for defendant for three years prior to this accident.

On the day following the accident, plaintiff telephoned Mr. Stifter and told him that he could not come to work. Stifter advised plaintiff that he would tell Pomorski that plaintiff would be absent. The next day, plaintiff reported to work, but he complained that he was in pain. Plaintiff was then directed to a clinic where he was examined by Dr. Monohar Jethani, who diagnosed him with severe lower back strain. Plaintiff was later examined by Dr. Robert Beatty. Dr. Beatty diagnosed plaintiff with a herniated disk. Plaintiff had surgery to correct his herniated disk on July 26, 1987, at Hinsdale Hospital in Hinsdale, Illinois. (See Stedman's Medical Dictionary 413 (5th ed. 1982).) Plaintiff also underwent a foraminotomy at the same hospital on October 27, 1988. See Stedman's Medical Dictionary 550 (5th ed. 1982).

Plaintiff filed an application for adjustment of claim with the Industrial Commission of the State of Illinois (Industrial Commission), on or about September 16, 1988. As a result of this claim, plaintiff and Independent entered into a settlement contract. The settlement contract referred to plaintiff as the "petitioner-employee," and it re-

ferred to defendant as the "employer-respondent." A request for a hearing was attached to the settlement contract which indicated that plaintiff and Independent were functioning pursuant to and in compliance with the provisions of the Act, and that plaintiff and Independent had an employer-employee relationship. The settlement was approved by the Industrial Commission on December 28, 1989. Plaintiff received two settlement checks totaling $7,936 from Independent on that date. In addition, plaintiff received $3,510 in disability benefits pursuant to the Act.

On November 25, 1988, plaintiff received a note from a representative of Independent discharging him from his employment. Plaintiff later filed a claim against defendant for damages arising out of his accident.

After plaintiff sued defendant, he stated in an affidavit that all of his work was supervised and controlled by Independent. Plaintiff maintained that defendant's employees did not supervise, control, or direct him in the performance of his duties and that he was only accountable to Independent and its agents. However, plaintiff admitted in a discovery deposition that the foreman of the machinists for the sanitary district was "in charge" of all of the machinists in the machine shop. Furthermore, plaintiff stated in his affidavit that he had been assisted and directed by machinists employed by Independent when he needed help with his work. In addition, plaintiff stated that Independent had the sole right to discipline and terminate him. Plaintiff also stated that during the period of time that he was assigned to work at defendant's plant, he received his paychecks and W-2 forms from Independent, and that all of his tax and social security deductions were made by Independent. Plaintiff further stated that he was required to wear a blue hard hat while he worked on defendant's premises, and that defendant's employees wore white hard hats stamped with defendant's logo. Similar affidavits were filed by Blattner and Robert Petkiewicz, an employee of Independent.

Plaintiff's allegation that defendant waived its right to argue that it met the statutory definition of a loaning employer, and defendant's contention that plaintiff waived his right to review of the issue of his exclusion from the Act because he failed to raise this issue below, do not pass muster.

■ As a general rule, issues not presented to or considered by a trial court are deemed waived and may not be considered upon review, even in an appeal of a grant of summary judgment. (*Harbor Insurance Co. v. Arthur Andersen & Co.* (1986), 149 Ill. App. 3d 235,

240, 500 N.E.2d 707, 711.) However, Supreme Court Rule 366 makes the following relevant provision:

"In all appeals the reviewing court may, in its discretion, and on such terms as it deems just,

* * *

(5) enter any judgment and make any order that ought to have been given or made ***." (134 Ill. 2d R. 366(a)(5).)

This court has found that " 'under Rule 366 [citation], a reviewing court may, in exercise of its responsibility for a just result, ignore consideration of waiver and decide a case on grounds not properly raised or not raised at all by the parties.' " *City of Wyoming v. Liquor Control Comm'n* (1977), 48 Ill. App. 3d 404, 407-08, 362 N.E.2d 1080, 1083, quoting *Occidental Chemical Co. v. Agri Profit Systems* (1975), 37 Ill. App. 3d 599, 603, 346 N.E.2d 482, 485.

A review of the record indicates that the issues in question were not properly raised by either of the parties. However, we believe that a just result in this case requires that we ignore the consideration of waiver with respect to the aforementioned issues. See *City of Wyoming*, 48 Ill. App. 3d at 407-08, 362 N.E.2d at 1083.

The issue on appeal of a grant of a motion for summary judgment is whether there is a question of material fact upon which the trial court's order of summary judgment should be reversed. Defendant maintains that there is no question of material fact upon which the trial court's order of summary judgment should be vacated, because it was plaintiff's employer pursuant to the Act, because it had the right to control plaintiff, and because defendant in fact controlled plaintiff. Plaintiff contends that a question of material fact exists with respect to the issue of whether he is a loaned employee within the meaning of the Act. We agree with plaintiff.

Summary judgment is appropriate only when the pleadings, depositions, admissions, and affidavits in the record present no genuine issue of material fact. (*Village of Glenview v. Northfield Woods Water & Utility Co.* (1991), 216 Ill. App. 3d 40, 47, 576 N.E.2d 238, 243.) Summary judgment should be awarded with caution so as not to preempt a party's right to a jury trial, or a party's right to demonstrate a factual basis for a case where a question of material fact may exist. (*Decatur Construction, Inc. v. Central Illinois Public Service Co.* (1974), 16 Ill. App. 3d 1056, 1059, 307 N.E.2d 431, 433.) "[When] reasonable persons disagree upon the facts of [a] case, the trial court should deny summary judgment and allow such disputed facts and inferences to be resolved by a trial court." *Village of Glenview*, 216 Ill. App. 3d at 47, 576 N.E.2d at 243.

We find that the trial court erred when it granted defendant's motion for summary judgment because a question of material fact exists concerning the issue of whether plaintiff was a loaned employee pursuant to the Act.

■ Our supreme court has noted that "an employee in the general employment of one person may, with his consent, be loaned to another for the performance of special work and become the employee of the person to whom he is loaned while performing such special service, and this principle *** [may be] applied to workmen's compensation cases." *American Stevedores Co. v. Industrial Comm'n* (1951), 408 Ill. 449, 453-54, 97 N.E.2d 325, 327.

Section 1(a)(4) of the Act defines a loaning employer as "[a]n employer whose business *** consists of *** furnishing employees to or for other employers *** for the performance of the work of such other employers and who pays such employees their salary or wages notwithstanding that they are doing the work of such other employers ***." Ill. Rev. Stat. 1987, ch. 48, par. 138.1(a)(4).

■ Section 5(a) of the Act prohibits a worker who was loaned to another employer from suing that employer regarding a work-related injury. Section 5(a) of the Act provides as follows:

> "No common law or statutory right to recover damages from the employer, *** any service organization retained by the employer, *** to provide safety service, advice or recommendations for the employer *** for injury *** sustained by any employee while engaged in the line of duty as such employee, other than the compensation herein provided ***." Ill. Rev. Stat. 1987, ch. 48, par. 138.5(a).

See also *Evans v. Abbott Products, Inc.* (1986), 150 Ill. App. 3d 845, 847, 502 N.E.2d 341, 343.

■ The primary test for determining the existence of a loaned employer-employee relationship is whether or not the alleged loaned employee is subject to the control and direction of the borrowing employer. (*M & M Electric Co. v. Industrial Comm'n* (1974), 57 Ill. 2d 113, 116-17, 311 N.E.2d 161, 163.) Whether or not such a relationship exists is a question of fact for the jury to determine. (*Gundich v. Emerson-Comstock Co.* (1960), 21 Ill. 2d 117, 123, 171 N.E.2d 60, 63.) When making this determination, the fact finder "must weigh such factors as the matter of hiring, the mode of payment, the right to discharge, and the manner or direction of the services." *Gundich*, 21 Ill. 2d at 123, 171 N.E.2d at 63.

In the instant case, conflicting inferences may be drawn from the evidence, and the facts of the case at bar are clearly in dispute. Plain-

tiff maintains that Independent had the authority to control and direct plaintiff in the performance of his work. Plaintiff argues that Independent had the sole right to control and supervise plaintiff's work pursuant to the contract between Independent and defendant. In addition, plaintiff stated in his affidavit that his work was supervised and controlled solely by Independent and that he was only accountable to Independent and its agents. Blattner and Petkiewicz also provided affidavits in which they stated that Independent controlled plaintiff in his work.

Defendant maintains that it had the right to control plaintiff's work pursuant to the contract and that it did in fact control plaintiff's work. Defendant maintains that plaintiff received his work from its employees. Defendant argues that when plaintiff complained about his working conditions, he did not call Pomorski, but notified defendant's personnel instead. Defendant has also noted that plaintiff installed the pump pursuant to the order of defendant's employee, over and above his own objections that the area was not safe. Furthermore, defendant argues that the section of the contract entitled "procedures" provided that defendant could designate work to be done by plaintiff, and that defendant had the right to change or reject work performed by plaintiff.

In addition, plaintiff argues that he is not defendant's employee because he received his paychecks and W-2 forms from Independent, and that all of his tax and social security deductions were made by Independent. Defendant, however, maintains that although Independent paid plaintiff's wages, and deducted plaintiff's taxes and social security installments from his paycheck, it is clear from the section in the contract entitled "measurement" that defendant was ultimately responsible for the payment of the same.

Plaintiff also argues that Independent is his employer because Independent had the sole right to discipline and terminate him pursuant to the contract. Defendant, however, maintains that it had the authority to discharge plaintiff pursuant to a contract provision under the section entitled "supervision."

■ In the present case, a genuine issue of material fact existed concerning the issue of whether plaintiff was a loaned employee pursuant to the Act. The parties disagree with respect to the facts of the case, and conflicting inferences may be drawn from the evidence. Therefore, the question of whether plaintiff was a loaned employee of defendant must be decided by the trier of fact and may not be preempted by the trial court on a motion for summary judgment. Accord-

ingly, we rule that the trial court erred when it granted defendant's motion for summary judgment.

Accordingly, the judgment of the circuit court is reversed, and this cause is remanded for trial.

Reversed and remanded.

GREIMAN, P.J., and CERDA, J., concur.